**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PAIGE NOCK**, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>**ZONE SAFETY LLC, d/b/a ZONE SAFETY 365,**<br><br>and<br><br>**JULIE COTTINGHAM,**<br><br>Defendants. | ) | Case No.<br><br>**<u>COLLECTIVE AND CLASS ACTION COMPLAINT</u>**<br><br>**<u>JURY DEMAND ENDORSED HEREON</u>** |

Named Plaintiff Paige Nock ("Named Plaintiff"), on behalf of herself and others similarly situated, for her collective and class action Complaint against Defendant Zone Safety LLC d/b/a Zone Safety 365 ("Zone Safety") and its Owner, President, and CEO Julie Cottingham ("Cottingham") (Defendants Zone Safety and Cottingham collectively, "Defendants"), states and alleges as follows:

## INTRODUCTION

1. This case challenges certain policies and practices of Defendants that violate the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. Chapter 4111, and Ohio's Prompt Pay Act, O.R.C. § 4113.15 ("OPPA"), for failure to pay employees for all compensable work, including unpaid overtime.

2. Named Plaintiff brings this case as a collective action on behalf of herself and on behalf of other similarly situated persons who may join this case pursuant to 29 U.S.C. §216(b).

3. Named Plaintiff also brings this case as a class action pursuant to Fed. R. Civ. P. 23 to remedy violations of the OMFWSA and OPPA on behalf of herself and on behalf of other similarly situated employees employed by Defendants in Ohio.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Named Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

5. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b) because Defendant Zone Safety is domiciled in this District and Division, Defendant Cottingham is domiciled in this District, and a substantial part of the events and omissions giving rise to Named Plaintiff's claims occurred in this District and Division.

6. This Court has supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1367 because the claims are so related to the FLSA claims as to form part of the same case or controversy.

## PARTIES

### A. Named Plaintiff

7. Named Plaintiff Paige Nock is an adult individual residing in North Olmsted, Ohio. Named Plaintiff's written Consent to Join this Action is attached hereto as **Exhibit A**.

8. Named Plaintiff was employed by Defendants as an hourly, non-exempt traffic control employee from approximately March 21, 2025 to approximately December 31, 2025.

9. At all relevant times, Named Plaintiff and other similarly situated employees were "employees" within the meaning of the FLSA and Ohio law.

10. At all relevant times, Named Plaintiff and those similarly situated employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

**B. Defendants**

11. Defendant Zone Safety LLC, d/b/a Zone Safety 365, is an Ohio for-profit limited liability company with its headquarters at 27100 Royalton Road, Columbia Station, OH 44028, in Lorain County within the jurisdiction of this Court. Defendant can be served through its Ohio registered statutory agent: Julie Cottingham f/k/a Julie Reichard, 27100 Royalton Road, Unit 2, PO Box 508, Columbia Station, OH 44028.

12. Named Plaintiff was employed by Defendant Zone Safety as a non-exempt hourly traffic control employee.

13. At all relevant times, Defendant Zone Safety has been an employer within the meaning of the FLSA, 29 U.S.C. § 203(d).

14. At all relevant times, Defendant Zone Safety has been an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), in that it has employees engaged in commerce or in the production of goods for commerce.

15. At all relevant times, Defendant Zone Safety was fully aware of the fact that it was legally required to comply with the FLSA and Ohio law.

16. Defendant Julie Cottingham, is the Owner, President, and CEO of Defendant Zone Safety. She resides at 1909 N. Nan Ave, Lakeside Marblehead, OH 43440, in Ottawa County within the jurisdiction of this Court. She has a business address at Defendant Zone Safety's headquarters at 27100 Royalton Road, Columbia Station, OH 44028, in Lorain County within the Jurisdiction of this Court.

17. Named Plaintiff was employed by Defendant Cottingham as a non-exempt hourly traffic control employee.

18. At all relevant times, Defendant Cottingham was in active control and management of Defendant Zone Safety.

19. Defendant Cottingham's LinkedIn profile states that she is "the Founder, President, and CEO of Zone Safety LLC, a women-owned traffic control company based in Columbia Station, Ohio. Since founding the business in 2017, she has grown it from a one-person operation into a team of 100 employees generating $5-10 million annually."

20. At all relevant times, Defendant Cottingham regulated the employment of all persons employed by her.

21. At all relevant times, Defendant Cottingham had the authority to, and did, hire, fire, and supervise employees at Defendant Zone Safety.

22. At all relevant times, Defendant Cottingham had the authority to, and did, control wages, pay schedules, and hours of work for employees at Defendant Zone Safety.

23. At all relevant times, Defendant Cottingham acted directly and indirectly in the interest of Defendant Zone Safety in relation to its employees, and is therefore an employer within the meaning of the FLSA, 29 U.S.C. § 203(d).

24. At all relevant times, Defendant Cottingham was fully aware of the fact that she was legally required to comply with the FLSA and Ohio law.

## FACTS

**A. Defendants failed to pay Named Plaintiff and other similarly situated employees an overtime rate equal to one and one-half times their regular rate for all hours worked over forty (40) in a workweek.**

25. Defendant Zone Safety provides traffic control and safety services in Ohio.

26. Defendants employ hourly workers to provide traffic control and safety services including providing personnel and equipment to customer's sites including, but not limited to, flaggers, trucks, traffic cones, warning/detour signs, arrow boards, message boards, and sidewalk closing equipment.

27. At all relevant times, Named Plaintiff and the other similarly situated employees were or are employed by Defendants as hourly, non-exempt traffic control employees.

28. Named Plaintiff and other similarly situated employees regularly worked 40 or more hours per workweek performing normal work duties.

29. In addition to their normal work duties, Named Plaintiff and other similarly situated employees were required to attend "mandatory meetings".

30. Defendants paid Named Plaintiff and other similarly situated employees only the minimum wage rate of $10.70 (or less) per hour for all time spent at the "mandatory meetings", even though the time Named Plaintiff and other similarly situated employees spent at the "mandatory meetings" were in excess of 40 in the workweeks the meetings were held.

31. Defendants' policy and practice of paying Named Plaintiff and other similarly situated employees only the minimum wage rate of $10.70 (or less) per hour for all time spent at "mandatory meetings" resulted in Defendants failing to pay Named Plaintiff and other similarly situated employees overtime compensation equal to one and one-half (1.5) times their regular rate of pay for all hours worked in excess of 40 in a workweek.

32. Defendants' failure to pay Named Plaintiff and other similarly situated employees overtime compensation equal to one and one-half (1.5) times their regular rate of pay for all hours worked in excess of 40 in a workweek was in violation of the FLSA and OMFWSA.

33. At all relevant times, Defendants were fully aware of the fact that it was legally required to comply with the FLSA and the OMFWSA.

**B. Defendants failed to pay Named Plaintiff and other similarly situated employees for all time worked, resulting in unpaid overtime.**

34. In addition to their normal work duties and attending "mandatory meetings", Named Plaintiff and all other similarly situated employees were required to attend "voluntary meetings" while off-the-clock and not during their scheduled shift times.

35. The "voluntary meetings" were related to Defendants' business operations and constituted an integral, indispensable, and intrinsic element of Named Plaintiff's and other similarly situated employees' jobs duties. The matters discussed and/or communicated during these meetings were substantive and work-related in nature and included, but were not limited to: ongoing job-specific training and instruction concerning policies, procedures, systems, and workflow; performance evaluations and critiques, including identification of alleged deficiencies, discussion of errors, and directives for corrective action; review of productivity metrics, quotas, quality control standards, and other performance benchmarks; implementation of new workplace rules, procedural updates, and operational changes; assignment of job duties, clarification of expectations, and instruction on how tasks were to be performed; compliance requirements, including directive related to regulatory, safety, and internal policy obligations; and mandatory communications necessary for employees to continue performing their job functions.

36. Named Plaintiff's and those similarly situated employees' attendance at the "voluntary meetings" was required, in that if they did not attend, they would not be scheduled for the following week.

37. The "voluntary meetings" lasted approximately one (1) hour.

38. Defendants did not pay Named Plaintiff and other similarly situated employees for the time spent in the off-the-clock mandatory "voluntary meetings" and Defendants did not count Named Plaintiff's and other similarly situated employees' time spent in the off-the-clock mandatory "voluntary meetings" towards their weekly work hours.

39. In addition to attending "voluntary meetings" while off-the-clock, Named Plaintiff and all other similarly situated employees were required, as a mandatory condition of employment, to remain on "standby", or "on-call", during designated periods outside of scheduled shifts.

40. Named Plaintiff's and similarly situated employees' standby obligations were not voluntary, sporadic, or incidental, but were regular, recurring, and integral components of Named Plaintiff's and those similarly situated employees' job duties.

41. Defendants scheduled standby time in advance and disciplined or otherwise penalized employees, including Named Plaintiff, for failing to remain available or timely respond while on standby.

42. Named Plaintiff's on-call and standby time related to Defendants' business and was an integral, indispensable, and intrinsic element of Named Plaintiff's and other similarly situated employees' jobs. For example, during standby periods, Named Plaintiff and other similarly situated employees were required to be continuously available to respond to work-related requests, emergencies, or assignments issued by Defendants.

43. Defendants' business depended on Named Plaintiff and other similarly situated employees' immediate availability during on-call periods to maintain operations, meet contractual obligations, ensure safety, prevent operational disruptions, and/or respond to time-sensitive issues.

44. During standby periods, Named Plaintiff was subject to substantial restrictions that were so onerous that it prevented Named Plaintiff from effectively using her standby time for personal pursuits.

45. During standby periods, Defendants required Named Plaintiff and other similarly situated employees to remain within a limited geographic radius, carry a communication device, such as a cell-phone, at all times, continuously monitor the communication device for messages and calls from Defendants, immediately respond to messages and calls from Defendants, refrain from alcohol consumption or activities that would impair immediate response, and remain fit for duty and ready to work at a moment's notice.

46. Defendants required Named Plaintiff and other similarly situated employees to respond to calls, messages, or assignments within a short and defined time frame, often measured in minutes.

47. Named Plaintiff was frequently called into active duty, called to answer questions, and/or called to respond to emergencies, making the time unpredictable and unsuitable for meaningful personal activities.

48. The frequency and unpredictability of calls, messages, or assignments during standby periods effectively tethered Named Plaintiff and those similarly situated to Defendants' control.

49. The on-call and standby time primarily benefits Defendants, not Named Plaintiff or other similarly situated employees.

50. Defendants used Named Plaintiff and those similarly situated employees' on-call availability to reduce staffing costs, avoid scheduling additional employees, and ensure uninterrupted coverage without compensating employees for the waiting time.

51. Named Plaintiff's ability to engage in personal pursuits during standby periods was severely constrained by Defendants' requirements and expectations.

52. Named Plaintiff's on-call and standby time constitutes "hours worked" under the FLSA because Named Plaintiff was engaged to wait, not waiting to be engaged.

53. Named Plaintiff's standby time was spent predominately for Defendants' benefit and under Defendants' control.

54. Defendants knew or should have known that Named Plaintiff and other similarly situated employees were performing compensable work, including remaining on standby and responding to work-related communications, during on-call and standby periods.

55. Defendants failed to compensate Named Plaintiff and other similarly situated employees for the time spent during on-call / standby periods, and Defendants did not count Named Plaintiff's and other similarly situated employees' time spent on-call or on standby towards their weekly work hours.

56. Defendants failed to accurately record and compensate Named Plaintiff and those similarly situated for all time worked, as described above.

57. As a result, Defendants failed to pay Named Plaintiff and those similarly situated for all hours worked, including overtime compensation for hours worked in excess of forty (40) in a workweek.

58. At all relevant times, Defendants were fully aware of the fact that it was legally required to comply with the FLSA and the OMFWSA.

**C. Defendants failed to pay Named Plaintiff and those similarly situated all overtime compensation earned because Defendants failed to properly calculate the regular rate of pay.**

59. Named Plaintiff worked for Defendants and was paid a base hourly wage of $23.00, with a $1.00 second (2nd) shift differential, and a $2.00 third (3rd) shift differential.

60. Defendants failed to include Named Plaintiff's shift differentials when calculating Named Plaintiff's overtime rate. Rather, such overtime rate was calculated based only on Named Plaintiff's $23.00 base hourly rate.

61. For example, for the pay period starting June 1, 2025, and ending June 7, 2025, Named Plaintiff worked forty (45) hours. She earned $43.50 in shift differential payments. Regardless, Defendants calculated and paid her at an overtime rate equal to $34.50, which is based solely on Named Plaintiff's base hourly rate (i.e., $23.00 * 1.5 = $34.50) and excludes the shift differential payments.

62. Failing to include shift differentials when calculating the regular rate for overtime payment purposes is a companywide practice affecting all employees who receive such differentials.

63. Because this additional, non-discretionary pay was not included in their regular rates of pay, Defendants violated the FLSA and Ohio law.

64. Such violation was particularly willful because the underpayment of overtime was apparent on every paystub in which the overtime pay was due.

**Defendants' Recordkeeping Violations**

65. The FLSA and state law, including Ohio law, require Defendants to maintain accurate and complete records of employees' time worked and amounts earned and paid. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7; O.R.C. §§ 4111.08, 4111.14(F); and Ohio Const. Art. II, § 34a.

66. For example, the FLSA requires employers to make and keep payroll records showing information and data such as the employee's name, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime compensation is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period, and date of payment and pay period covered by the payment. *See* 29 C.F.R. § 516.2.

67. Defendants kept records of some hours worked or otherwise had the ability to accurately track hours worked through Defendants' hardware, software, and/or systems, by Named Plaintiff and other similarly situated employees.

68. However, because of Defendants' policies of not paying an overtime rate equal to one and one-half (1.5) times regular rates for all hours worked in excess of 40 in a workweek, of not paying for all compensable time described herein, and of not including shift differentials when calculating employees' regular rate of pay for overtime purposes, Defendants failed to accurately track, keep, or transmit the hours worked each day by Named Plaintiff and other similarly situated employees, and failed to accurately calculate Named Plaintiff and other similarly situated employees' regular rate of pay for overtime purposes.

69. Defendants willfully and intentionally transmitted inaccurate and/or incomplete records to payroll for compensation purposes, which demonstrated a failure to pay an overtime rate equal to one and one-half times properly calculated regular rates for all hours worked in excess of 40 in a workweek, wrongly excluded compensable time worked, and wrongly calculated regular rates of pay. Defendants' failure to pay the lawful overtime rate for all hours worked in excess of 40 in a workweek, Defendants' failure to correctly classify time spent at "voluntary meetings" and

during "standby", and Defendants' failure to properly calculate regular rates of pay, had the direct effect of reducing Defendants' labor costs to the detriment of Named Plaintiff and other similarly situated employees.

70. Defendants willfully and intentionally did not correctly record and pay all hours worked at the appropriate rate in violation of the FLSA and violated the FLSA's recordkeeping requirements.

**COLLECTIVE ACTION ALLEGATIONS**

71. Named Plaintiff brings this case as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and other similarly situated persons who have similar claims under the FLSA and who have been, are being, or will be, adversely affected by Defendants's unlawful conduct.

72. The FLSA Collective members who are "similarly situated" to Named Plaintiff for which Named Plaintiff seeks to represent and for which Named Plaintiff seeks the right to send "opt-in" notices for purposes of the collective action, and of which Named Plaintiff herself is a member, is composed of and defined as follows:

> **All current and former hourly employees of Defendants who attended "mandatory meetings", and who worked more than forty (40) hours during any such workweeks when "mandatory meetings" were held at any time from three (3) years preceding the filing of this Complaint through final disposition of this matter ("Overtime Rate Collective").**
>
> -and-
>
> **All current and former hourly employees of Defendants who attended "voluntary meetings" off-the-clock and/or were required to remain on "standby" or "on-call" off-the-clock, and who worked more than forty (40) hours during any such workweeks at any time from three (3) years preceding the filing of this Complaint through final disposition of this matter ("OTC Collective").**
>
> – and –

> **All current and former hourly employees of Defendants who received additional, non-discretionary income, including, but not necessarily limited to, shift differential payments, and who worked more than forty (40) hours during any such workweeks at any time from three (3) years preceding the filing of this Complaint through final disposition of this matter ("RROP Collective").**

73. The Overtime Rate Collective, OTC Collective, and RROP Collective will be jointly referenced as the FLSA Collectives.

74. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA. In addition to Named Plaintiff, numerous current and former employees are similarly situated with regard to their claims for unpaid wages and damages. Named Plaintiff is representative of those other employees and is acting on behalf of their interests as well as her own in bringing this action.

75. Such persons are "similarly situated" with respect to Defendants' FLSA violations in that all were hourly non-exempt employees, and all were subjected to and injured by Defendants' unlawful practice of failing to pay Named Plaintiff and others similarly situated an overtime premium of one and a half times their properly calculated regular rate for all hours that exceeded forty (40) in the workweek. All have the same claims against Defendants for unpaid overtime compensation as well as for liquidated damages, attorneys' fees, and costs.

76. The identities of the putative FLSA Collective Members are readily identifiable through the payroll records Defendants has maintained, and was required to maintain, pursuant to the FLSA. 29 U.S.C. § 211(c) & 29 C.F.R. § 215.2.

## OHIO CLASS ACTION ALLEGATIONS
**(Ohio Class)**

77. Named Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and others similarly situated who have similar claims under the laws of the State of Ohio (the "Ohio Class"), which is defined as:

> **All current and former hourly employees of Defendants in Ohio who attended "mandatory meetings", and who worked more than forty (40) hours during any such workweeks when "mandatory meetings" were held at any time from two (2) years preceding filing of this Complaint through final disposition of this matter ("Overtime Rate Class").**
>
> -and-
>
> **All current and former hourly employees of Defendants in Ohio who attended "voluntary meetings" off-the-clock and/or were required to remain on "standby" or "on-call" off-the-clock, and who worked more than forty (40) hours during any such workweeks at any time from two (2) years preceding the filing of this Complaint through final disposition of this matter ("OTC Class").**
>
> – and –
>
> **All current and former hourly employees of Defendants in Ohio who received additional, non-discretionary income, including, but not necessarily limited to, shift differential payments, and who worked more than forty (40) hours during any such workweeks at any time from two (2) years preceding the filing of this Complaint through final disposition of this matter ("RROP Class").**

78. The Overtime Rate Class, OTC Class, and RROP Class will be jointly referenced at the Ohio Classes.

79. Each Class is so numerous that joinder of all members is impracticable. The exact number of class members is unknown but is estimated to exceed 40 individuals each, whose identities are ascertainable from the payroll records Defendants has maintained, and was required to maintain, pursuant to Ohio law. Ohio Const. Art. II, § 34a.

80. There are questions of law or fact common to the Ohio Classes including whether Defendants failed to pay non-exempt hourly employees, such as Named Plaintiff and those

similarly situated, for all hours worked in excess of 40 in any week at the lawful amount of one and one-half times their respective properly calculated regular rates.

81. The questions of law or fact that are common to the Ohio Classes predominate over any questions affecting only individual members. The primary questions that will determine Defendants's liability to the Ohio Classes, listed above, are common to each Class as a whole, and predominate over any questions affecting only individual Ohio Class members.

82. Named Plaintiff's claims are typical of the claims of other members of the Ohio Classes. Named Plaintiff's claims arise out of the same uniform course of conduct by Defendants and are based on the same legal theories as the claims of other members of the Ohio Classes.

83. Named Plaintiff and the Ohio Classes have all been injured in that they have been uncompensated due to Defendants' common policy, and practice, and willful conduct. Defendants' corporate wide policies and practices affected the Ohio Classes similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Ohio Class members.

84. Named Plaintiff will fairly and adequately protect the interests of the Ohio Classes. Named Plaintiff's interests are not antagonistic to, but rather are in unison with, the interests of other class members.

85. Named Plaintiff's counsel has broad experience in handling class action litigation, including wage-and-hour litigation, and are fully qualified to prosecute the claims of the Ohio Classes in this case.

86. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many class members' claims are sufficiently small that they would

be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case as a class action pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

**COUNT ONE**
**(FLSA Overtime Violations)**

87. Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

88. Named Plaintiff brings this claim for violations of the FLSA's overtime provisions on behalf of herself and the members of the FLSA Collectives who will join this case pursuant to 29 U.S.C. § 216(b).

89. The FLSA requires that Defendants' hourly non-exempt employees receive overtime compensation for hours worked in excess of forty (40) per week of "not less than one and one-half times" the employees' properly calculated "regular rate." 29 U.S.C. § 207(a)(1).

90. As hourly non-exempt employees, Named Plaintiff and the FLSA Collectives should have been paid overtime compensation at a rate of one and one-half times their properly calculated regulate rate of pay when they worked more than forty (40) hours in a workweek.

91. Named Plaintiff and the Overtime Rate Collective were not paid an overtime rate equal to one and one-half (1.5) times their regular rate for all hours spent at "mandatory meetings".

92. Named Plaintiff and the OTC Collective were not paid for all time worked because Defendants failed to pay Named Plaintiff and the OTC Collective members for time spent engaged in "voluntary meetings" and time spent on "standby" or "on-call".

93. Named Plaintiff and the RROP Collective were not paid all overtime earned because Defendants failed to include non-discretionary compensation, including but not limited to shift differential payments, into their regular rates of pay when calculating overtime.

94. At all relevant times, Named Plaintiff and other similarly situated employees regularly worked forty (40) or more hours per workweek for Defendants.

95. Named Plaintiff and the FLSA Collectives were not paid lawful overtime compensation of one and one-half times their properly calculated regular rates for hours worked in excess of forty (40) in a workweek, resulting in violations of the FLSA.

96. Defendants' practice and policy of not paying Named Plaintiff and other similarly situated employees an overtime rate equal to one and one-half (1.5) times their regular rate for all hours spent at "mandatory meetings", Defendants' practice and policy of not paying Named Plaintiff and other similarly situated employees for time spent at "voluntary meetings" and time spent in "standby" or "on-call", as well Defendants' failure to include the non-discretionary compensation noted above into Named Plaintiff and other similarly situated employees' regular rates of pay when calculating overtime, resulted in Defendants' failure to pay Named Plaintiff and other similarly situated employees overtime compensation at a rate of one and one-half times their properly calculated regular rate of pay for all hours worked in excess of forty (40) per workweek, in violation of the FLSA, 29 U.S.C. §§ 201-219, 29 C.F.R. § 785.24.

97. At all relevant times, Defendants knew it was required to pay Named Plaintiff and the members of the FLSA Collectives all overtime compensation earned at a rate of one and one-half times their properly calculated regular rate.

98. By engaging in the above-mentioned conduct, Defendants willfully, knowingly, and/or recklessly violated the provisions of the FLSA.

99. The exact total amount of compensation, including overtime compensation, that Defendants failed to pay Named Plaintiff and the members of the FLSA Collectives is unknown

at this time, as many of the records necessary to make such precise calculations are in the possession of Defendants.

100. As a result of Defendants' violations of the FLSA, Named Plaintiff and the members of the FLSA Collectives were injured in that they did not receive all overtime compensation due to them pursuant to the FLSA. They are entitled to an award of "unpaid overtime compensation" as well as "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

**COUNT TWO**
**(Ohio Class - Overtime Violations)**

101. Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

102. Named Plaintiff brings this claim for violation of the OMFWSA, on behalf of herself and all members of the Ohio Classes for which certification is sought pursuant to Fed. R. Civ. P. 23.

103. Named Plaintiff and the Overtime Rate Class members were not paid an overtime rate equal to one and one-half (1.5) times their regular rate for all hours spent at "mandatory meetings".

104. Named Plaintiff and the OTC Class members were not paid for all time worked because Defendants failed to pay Named Plaintiff and the OTC Class members for time spent engaged in "voluntary meetings" and time spent on "standby" or "on-call".

105. Named Plaintiff and the RROP Class members were not paid all overtime earned because Defendants failed to include non-discretionary compensation, including but not limited to shift-differential payments, into their regular rates of pay when calculating overtime.

106. At all relevant times, Named Plaintiff and the members of the Ohio Classes regularly worked 40 or more hours per workweek for Defendants.

107. Defendants' practice and policy of not paying Named Plaintiff and the Ohio Classes and overtime rate equal to one and one-half (1.5) times their regular rate for all hours spent at "mandatory meetings", Defendants' practice and policy of not paying Named Plaintiff and the Ohio Classes for time spent at "voluntary meetings" and time spent in "standby" or "on-call", as well Defendants' failure to include the non-discretionary compensation noted above into Named Plaintiff and the Ohio Classes' regular rates of pay when calculating overtime, resulted in Defendants' failure to pay Named Plaintiff and the Ohio Class members overtime compensation at a rate of one and one-half times their properly calculated regular rate of pay for all hours worked in excess of forty (40) per workweek.

108. Named Plaintiff and the Ohio Classes were not paid lawful overtime compensation of one and one-half times their properly calculated regular rates for all hours worked in excess of forty (40) in a workweek, resulting in overtime violations of Ohio law.

109. Defendants failed to pay Named Plaintiff and the Ohio Classes the required overtime compensation.

110. At all relevant times, Defendants knew it was required to pay Named Plaintiff and the Ohio Classes all overtime compensation earned at a rate of one and one-half times their properly calculated regular rate.

111. Defendants' practice and policy of not paying Named Plaintiff and the Ohio Classes for all earned overtime compensation at a rate of one and one-half times their properly calculated regular rate of pay for all hours worked in excess of forty (40) hours per workweek is a violation of the OMFWSA.

112. The exact total amount of compensation, including overtime compensation, that Defendants has failed to pay Named Plaintiff and the Ohio Classes is unknown at this time, as

many of the records necessary to make such precise calculations are in the possession of Defendants.

113. As a result of Defendants' violations of the OMFWSA, Plaintiff and the Ohio Classes were injured in that they did not receive all overtime compensation due to them pursuant to Ohio's wage and hour laws.

**COUNT THREE**
**(Ohio Class – Prompt Pay Claim)**

114. Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

115. Ohio's Prompt Pay Act, Ohio Rev. Code Ann. § 4113.15(A), provides that "[e]very employer doing business in this state shall, on or before the first day of each month, pay all its employees the wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and shall, on or before the fifteenth day of each month, pay such employees the wages earned by them during the last half of the preceding calendar month."

116. Named Plaintiff brings this claim for violation of Ohio's Prompt Pay Act, on behalf of herself and all members of the Ohio Classes.

117. Here, Defendants failed to pay Named Plaintiff and those similarly situated for all compensable work within the time periods required by the OPPA. This resulted in Named Plaintiff and others similarly situated not receiving all the overtime pay that they earned and were entitled to receive under state and federal law.

118. There is no dispute that Named Plaintiff and those similarly situated are required to be paid all work time, including regular wages and overtime, under Ohio law.

119. The exact total amount of compensation, including overtime compensation, that Defendants has failed to pay Named Plaintiff and the members of the Ohio Classes is unknown at

this time, as many of the records necessary to make such precise calculations are in the possession of Defendants.

120. Defendants' failure to pay all wags due under Ohio's Prompt Pay Act to Named Plaintiff and the members of the Ohio Classes entitles them to unpaid wages, plus "an amount equal to six percent (6%) of the amount of the claim sill unpaid and not in contest or disputed or two hundred dollars, whichever is greater."

## PRAYER FOR RELIEF

**WHEREFORE**, Named Plaintiff, on behalf of herself and others similarly situated, respectfully requests that this Honorable Court:

A. Authorize Court-approved notice be issued to similarly situated persons informing them of this action and enabling them to opt in pursuant to 29 U.S.C. § 216(b);

B. Certify this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Named Plaintiff and the members of the Ohio Classes;

C. Enter judgment against Defendants and in favor of Named Plaintiff, the members of the FLSA Collectives, and the members of the Ohio Classes;

D. Award Named Plaintiff, the members of the FLSA Collectives, and the members of the Ohio Classes actual damages for unpaid wages;

E. Award Named Plaintiff and the members of the FLSA Collectives liquidated damages equal in amount to the unpaid wages found due to Named Plaintiff and the members of the FLSA Collectives;

F. Award Named Plaintiff and the members of the Ohio Classes, as liquidated damages, an amount equal to six percent (6%) of the amount of the claim still unpaid and not in contest or disputed or two hundred dollars, whichever is greater;

G. Award Named Plaintiff, the members of the FLSA Collectives, and the members of the Ohio Classes pre-judgment and post-judgment interest at the statutory rate;

H. Award Named Plaintiff, the members of the FLSA Collectives, and the members of the Ohio Classes all attorneys' fees, costs, and disbursements incurred in prosecuting this action; and

I. Award Named Plaintiff, the members of the FLSA Collectives, and the members of the Ohio Classes any such further and additional relief as this Court deems just and proper.

Respectfully submitted,

**NILGES LEGAL GROUP LLC**

*/s/ Adam Lubow*
Adam Lubow (Ohio 0097517)
Robi J. Baishnab (Ohio 0086195)
Nicholas A. Boggs (Ohio 0102430)
700 W. St. Clair Ave., Suite 320
Cleveland, OH 44113
Telephone: (216) 230-2955
Facsimile: (330) 754-1430
Email: alubow@ohlaborlaw.com
rbaishnab@ohlaborlaw.com
nboggs@ohlaborlaw.com

*Counsel for Named Plaintiff*

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all claims so triable.

/s/ *Adam Lubow*
*Counsel for Named Plaintiff*